**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


CHARLES TERRY GLEN,

       Petitioner,

v.                                      Case No. 3:15-cv-525-J-32JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I.   Status

      Petitioner Charles Glen, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1; Petition) on April 21, 2015.[1] Glen challenges a 2012 state court (Duval County, Florida) conviction for the sale or delivery of cocaine. The circuit court sentenced Glen to incarceration for a term of nine years.

      The Petition raises one ground for relief. See Doc. 1 at 5. Respondents filed a Response to the Petition. See Answer to Petition for Writ of Habeas Corpus (Doc. 15; Resp.) with exhibits (Resp. Ex.). On March 1, 2017 Glen requested to supplement the Petition with three additional grounds for relief. See Doc. 18 (Supplemental Petition). The Court granted Glen's request to supplement. See Doc. 21. Respondents filed a

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

Supplemental Response on August 24, 2017. <u>See</u> Respondents' Response to Supplemental Petition for Writ of Habeas Corpus (Doc. 22; Supp. Resp.). Glen filed a pro se Reply. <u>See</u> Response to Respondent's Response (Doc. 25; Reply). This case is ripe for review.

## II.    **Relevant Procedural History**

A jury convicted Glen of the sale or delivery of cocaine on January 10, 2012. Resp. Exs. 4; 5. On February 24, 2012, the circuit court sentenced Glen as a Habitual Felony Offender (HFO) to incarceration for a term of nine years. Resp. Ex. 6 at 52-53; 7 at 4-5. The First District Court of Appeal (First DCA) per curiam affirmed Glen's conviction and sentence on December 19, 2012 without a written opinion. Resp. Ex. 11. The Mandate was issued on January 4, 2013. Resp. Ex. 11.

On April 26, 2013, Glen filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. 14. Glen filed an amended Rule 3.850 Motion on March 8, 2014. Resp. Ex. 15. The circuit court denied Glen's Rule 3.850 Motions on July 2, 2014. Resp. Ex. 16. The First DCA per curiam affirmed the summary denial on October 30, 2014 without a written opinion. Resp. Ex. 20. The Mandate was issued on November 25, 2014. <u>Id.</u>

## III.   **Governing Legal Principles**

### A. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## B. Standard Under AEDPA

The AEDPA governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the

3

state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are

"presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> §
2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that state-
> court decisions be given the benefit of the doubt." <u>Renico v.
> Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks
> omitted). "A state court's determination that a claim lacks
> merit precludes federal habeas relief so long as fairminded
> jurists could disagree on the correctness of the state court's
> decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011)
> (internal quotation marks omitted). "It bears repeating that
> even a strong case for relief does not mean the state court's
> contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing
> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme
> Court has repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than mere
> error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540
> U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of
> clear error fails to give proper deference to state courts by
> conflating error (even clear error) with unreasonableness.");
> <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n
> unreasonable application of federal law is different from an
> incorrect application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations

modified).

## C. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254

habeas action in federal court, a petitioner must exhaust all state court remedies that

are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To

exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his

federal petition to the state's highest court, either on direct appeal or on collateral

review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to

properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state

6

> procedural rule. See, e.g., Coleman,[2] supra, at 747–748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

---

[2] Coleman v. Thompson, 501 U.S. 722 (1991).
[3] Wainwright v. Sykes, 433 U.S. 72 (1977).
[4] Murray v. Carrier, 477 U.S. 478 (1986).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## D. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an

objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562

U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## IV. <u>Analysis</u>

### A. **Petition – Ground One**

Glen timely filed the Petition within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

In Ground One, Glen contends that the circuit court's denial of his motion for judgment of acquittal violated his federal constitutional right to due process of law. Doc. 1 at 5-6. According to Glen, the state failed to present legally sufficient evidence establishing the identity of Glen as the individual who sold cocaine to Detective Heirs. <u>Id.</u> at 5. In support of this argument, Glen claims that the state relied on Detective Heirs' in-court identification of Glen; however, his identification was questionable because it occurred eleven months after the drug transaction. <u>Id.</u> Glen also notes that although the state presented a video of the undercover buy during trial, relevant portions of the video were inaudible and not visible. <u>Id.</u> Based on these alleged

infirmities, Glen claims the circuit court unreasonably denied his motion for judgment of acquittal based on unreliable and legally insufficient evidence.

Respondents submit that Glen failed to fairly present the federal nature of this claim in state court, and as such, the claim is unexhausted and procedurally defaulted. Resp. at 14-15. In the alternative, Respondents assert the claim lacks merit. Id. at 16-21.

In reviewing the record, the Court finds this claim is unexhausted because Glen did not present the federal nature of this claim to the state appellate court. Glen raised a similar claim on direct appeal. Resp. Ex. 9 at 5-12. When briefing this issue, however, Glen did not state or suggest that it was a federal claim concerning due process or any other federal constitutional guarantee. Id. Instead, Glen argued, in terms of state law only, that the circuit court erred in denying his motion for judgment of acquittal. Id. at 6-7 (citing Durham v. State, 738 So. 2d 477 (Fla. 5th DCA 1999); McDuffie v. State, 970 So. 2d 312, 332 (Fla. 2007); Pagan v. State, 830 So. 2d 792, 803 (Fla. 2002); Williams v. State, 967 So. 2d 735 (Fla. 2007)). As such, Ground One is unexhausted and procedurally defaulted, and Glen has failed to show cause for or prejudice from this procedural bar.

Nevertheless, even if this claim was exhausted, Ground One would fail on the merits, as the prosecution presented sufficient evidence for a rational trier of fact to conclude that Glen committed the offense. At trial, Detective Heirs testified that he received training in undercover techniques and was on the Narcotics Division for four years. Resp. Ex. 4 at 140-41. Detective Heirs testified that aside from the four to five

minutes when Glen went inside an apartment to retrieve the cocaine, Detective Heirs observed Glen in close proximity for ten to twelve minutes during the transaction. Id. at 147-49. Detective Heirs explained that he was certain Glen was the individual that sold him cocaine. Id. at 168.

Furthermore, Detective Heirs video recorded the drug transaction, and the state presented the recording to the jury during trial. Id. at 152-65. Although portions of the recording were inaudible and the video quality was poor, significant portions of the recording were clear as Detective Heirs was able to identify Glen's voice and image in the video at trial. Id.

Detective Heirs also testified that Glen's apartment complex provided him with a copy of Glen's picture identification. Id. at 167. Upon receiving the copy of the identification, Detective Heirs confirmed it was the same individual from whom he had purchased the cocaine. Id. Moreover, Detective Heirs testified that the apartment number listed under Glen's name was the same apartment in which he had previously purchased cocaine from Glen. Id. at 174.

Given this record, which includes direct eyewitness testimony from Detective Heir who specifically interacted with and bought cocaine from Glen and a recording corroborating Detective Heir's testimony, the Court finds the evidence is sufficient to show any trier of fact could have found beyond a reasonable doubt that Glen committed the offense. Accordingly, Glen is not entitled to relief on Ground One.

## B. Supplemental Petition – Grounds Two, Three, and Four

Respondents assert that the Supplemental Petition is untimely filed and fails to relate back to the Petition. See Supp. Resp. at 2-12, 19-22, 26-29. Glen appears to concede that he filed his Supplemental Petition outside his AEDPA, one-year statute of limitations, but argues that his claims relate back to the Petition. Reply at 2. In the alternative, Glen asserts he is entitled to equitable tolling because he is legally blind, pro se, and relied on prison law clerks. Id. at 2-3.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). An amendment to a habeas petition may relate back "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." Mayle v. Felix, 545 U.S. 644, 664 (2005). A new claim, however, does not meet the standard and, thus, "does not relate back . . . when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650. The terms "conduct, transaction, or occurrence" are not synonymous with "trial, conviction or sentence." Id. at 664.

"When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for equitable tolling of the one-year limitations period, stating that a petitioner "must show (1) that

he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017) (recognizing equitable tolling is an extraordinary remedy "limited to rare and exceptional circumstances and typically applied sparingly"); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008)(per curiam) (noting the Eleventh Circuit "held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)).

### a. Ground Two

Glen avers counsel was ineffective for failing to argue a viable defense of entrapment at trial. Doc. 18 at 3-7.

Ground Two does not relate back to the Petition. Although both Grounds One and Two concern conduct, or the lack thereof, that occurred at trial, Ground Two also calls into question counsel's pre-trial preparation and strategy. Specifically, according to Glen in Ground Two, he informed counsel prior to trial of facts that would have allegedly supported an entrapment defense. Doc. 18 at 3-4, 6. As such, part of Glen's allegations in Ground Two stem from counsel's pre-trial investigation and development of strategy. Thus, Ground Two differs in time from Ground One as part of the alleged error occurred prior to trial.

Furthermore, the claims are not similar in type because they involve different actors allegedly committing different errors. Ground Two is premised on counsel's alleged deficiencies, not the circuit court's errors, and the error in Ground Two is based

14

on a failure to formulate and argue a defense rather than an error in determining the sufficiency of the evidence. Therefore, Ground Two does not arise from the same common "core of operative facts" as Ground One. <u>Mayle</u>, 125 545 U.S. at 664.

Having established that Ground Two does not relate back, the Court now addresses Glen's claim of equitable tolling. Glen contends that he could not diligently pursue Ground Two because the prison did not provide legal materials for blind inmates until 2017. Reply at 2-3. However, Glen first raised this claim of ineffective assistance of counsel in his Rule 3.850 Motions filed on April 26, 2013, and March 8, 2014. Resp. Exs. 14 at 9-12; 15 at 9-12. As mentioned above, the circuit court summarily denied this issue on July 2, 2014, and the First DCA affirmed the circuit court denial, issuing its Mandate on November 25, 2014. Resp. Exs. 16; 20. Glen's AEDPA one-year period then expired on November 25, 2015. Glen did not file the Supplemental Petition until March 1, 2017, 462 days after his AEDPA one-year period expired. Doc. 18. This extensive delay is not indicative of diligence and Glen's alleged ignorance of the law does not excuse his failure to diligently pursue this claim. <u>See</u> <u>Howell v. Crosby</u>, 415 F.3d 1250, 1252 (11th Cir. 2005) (refusing to apply equitable tolling where petitioner could not "establish his own due diligence in ascertaining the federal habeas filing deadline.). As such, Glen could have timely filed this claim with the use of reasonable diligence.

However, even assuming Glen diligently pursued this claim, he has failed to establish extraordinary circumstances prohibited him from timely filing Ground Two. Glen's blindness does not constitute an extraordinary circumstance. <u>See</u> <u>Smith v.</u>

Beightler, 49 Fed. Appx. 579, 580-81 (6th Cir. 2002) (holding Smith's argument he was entitled to equitable tolling because he was blind and must rely on others to assist him did "not meet the standards required for invocation of equitable tolling, as it does not establish that Smith lacked knowledge of the filing requirement, that he was diligent in pursuing his rights, or that the respondent would not be prejudiced by the delay."). Indeed, despite his blindness, Glen timely filed his Petition and timely filed a Rule 3.850 Motion raising this exact ground.

Furthermore, as to Glen's claim that he is entitled to equitable tolling because he is pro se and must rely on prison law clerks, this claim fails as a matter of law. See Whiddon v. Dugger, 894 F.2d 1266, 1267 (11th Cir. 1990) (holding a petitioner's pro se status and poor advice by inmate law clerks did not establish cause for purposes of overcoming procedural default); see also Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (allegedly inadequate law library does not establish extraordinary circumstances warranting equitable tolling of the limitations period); Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (neither inmate's ignorance of the law, nor inadequacy of services of inmate law clerk who helped draft habeas petition, nor fact that prison law library was closed for 15 days entitled petitioner to equitable tolling of limitations period). For the above stated reasons, Glen is not entitled to equitable tolling.

To the extent, Glen attempts to overcome the time bar by alleging a miscarriage of justice/actual innocence exception, the Court finds Glen does not state a colorable claim of actual innocence. Specifically, Glen does not assert that he has "new" reliable

evidence of factual innocence and there is nothing in the record to suggest a miscarriage of justice will occur if the Court does not reach the merits of this claim. See Schlup v. Delo, 513 U.S. 298, 327 (1995). Accordingly, for the above stated reasons, Ground Two is untimely.

### b. Ground Three

Glen contends that counsel was ineffective for failing to adequately argue a motion for judgment of acquittal. See Supp. at 8-11.

The question of whether Ground Three relates back is a closer call than Ground Two. While there can be no real dispute that a claim regarding trial court error is entirely different than a claim alleging ineffective assistance of counsel, Ground Three does share a common core of operative facts with Ground One. The timing of the underlying event of each claim relates to the same occurrence at trial, the presentation of the motion for judgment of acquittal. However, the claims are not of the same type because they involve different actors allegedly committing different errors. Ground One concerns the circuit court's alleged unreasonable determination and application of the facts in denying the motion for judgment of acquittal, while Ground Three concerns counsel's failure to adequately articulate the motion for judgment of acquittal. However, the Court acknowledges the operative facts of Ground Three do bear some nexus to Ground One; therefore, in an abundance of caution, the Court finds Ground Three does relate back to the Petition.

Nevertheless, the state court's adjudication of this claim is entitled to deference.

Glen raised Ground Three in his Rule 3.850 Motions. Exs. 14 at 12-15; 15 at 12-15.

The circuit court denied the claim on the merits, concluding the following:

> Initially, this Court notes that counsel argued that the limited amount of time that Detective Heirs spent with Defendant "does not rise to the level of proof necessary for the State to make a prima facie case that it was, in fact, [Defendant] that made the transaction." Additionally, Detective Heirs testified that he spent ten to fifteen minutes with Defendant on the day of the transaction. While in the courtroom, Detective Heirs identified Defendant as the individual who sold him crack cocaine. Detective Heirs also identified Defendant as the individual depicted in the video of the transaction.
>
> . . . .
>
> Defendant's claim that counsel failed to argue the proper grounds in his Motion for Judgment of Acquittal is meritless. There is no reasonable probability that, had counsel argued as Defendant suggests, the trial court would have granted the motion. Accordingly, Defendant has failed to establish that he was prejudiced by counsel's alleged errors of. [sic] "Although in hindsight one can speculate that a different argument may have been more effective, counsel's argument does not fall to the level of deficient performance simply because it ultimately failed." Ferguson v. State, 593 So. 2d 508, 511 (Fla. 1992); see Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) ("Where there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffectiveness of counsel.")

Resp. Ex. 16 at 5-6 (citations to record omitted). The First DCA per curiam affirmed

the denial without a written opinion. Resp. Ex. 20.

To the extent that the First DCA affirmed the circuit court's denial on the merits,[5] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Glen is not entitled to relief on the basis of this claim.

Even if the state court's adjudication of this claim is not entitled to deference, Glen is still not entitled to the relief he seeks. As the Court outlined in its analysis of Ground One above, there was legally sufficient evidence to present the case to the jury. Therefore, regardless of how well articulated or detailed the motion for judgment of acquittal could have been, it would have nonetheless failed. Accordingly, Glen cannot demonstrate prejudice and is not entitled relief to relief on this claim. See Strickland, 466 U.S. at 697.

### c. Ground Four

Glen contends that the cumulative effect of counsel's errors prejudiced him. Doc. 18 at 12-13.

Ground Four does not relate back to the Petition as it does not share the same common core of operative facts. Ground One's claim of trial court error did not place

---

[5] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Respondents on notice that Glen was challenging the cumulative effects of counsel's errors.

Glen's claim of equitable tolling is likewise without merit. Glen raised this claim of cumulative error in his Rule 3.850 Motions filed on April 26, 2013, and March 8, 2014. Resp. Exs. 14 at 16; 15 at 16. The circuit court summarily denied this issue on July 2, 2014, and the First DCA affirmed the circuit court denial, issuing its Mandate on November 25, 2014. Resp. Exs. 16; 20. As mentioned above, Glen's AEDPA, one-year period expired on November 25, 2015. However, Glen did not file the Supplemental Petition until March 1, 2017, 462 days after his AEDPA one-year period expired. Doc. 18. This extensive delay is not indicative of diligence and Glen's alleged ignorance of the law does not excuse his failure to diligently pursue this claim. <u>See</u> <u>Howell</u>, 415 F.3d at 1252. As such, Glen could have timely filed this claim with the use of reasonable diligence. Moreover, for the reasons outlined above in the Court's analysis of Ground Two, Glen has failed to establish extraordinary circumstances prohibited him from timely filing Ground Three.

To the extent, Glen attempts to overcome the time bar by alleging a miscarriage of justice/actual innocence exception, the Court finds Glen does not state a colorable claim of actual innocence. Specifically, Glen does not assert that he has "new" reliable evidence of factual innocence and there is nothing in the record to suggest a miscarriage of justice will occur if the Court does not reach the merits of this claim. <u>See</u> <u>Schlup</u>, 513 U.S. at 327. Accordingly, for the above stated reasons, Ground Four is untimely.

Accordingly, it is **ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) and Supplemental Petition (Doc. 18) are **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Glen appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of August, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-8
C:     Charles Terry Glenn, #097427
       Counsel of record

---

[6] The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Glen "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.